**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**SARAH SENCHYSHYN,**

**Plaintiff,**

**v.** **6:17-CV-0162**

**BIC SPORT NORTH AMERICA, INC.,**

**Defendant.**

---

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION and ORDER**

## I. INTRODUCTION

After Judge Kahn's decision on Defendant's motion for summary judgment, the claims remaining in this case are for strict products liability – manufacturing defect; negligent manufacture; general negligence; and breach of implied warranty, and on these claims Plaintiff may proceed as to her emotional and/or psychological injuries but not her physical injuries. *See* Dkt. No. 66, at 24. Presently before the Court is Defendant's motion in limine seeking an order precluding Plaintiff from offering certain evidence. Dkt. No. 77. Plaintiff opposes the motion. Dkt. No. 89. The Court addresses Defendant's application below.

## II. DISCUSSION

### a. Evidence regarding physical pain and suffering

Defendant argues that Plaintiff should be precluded from introducing evidence, including testimony and photographs, regarding Plaintiff's pain and suffering. Defendant contends that

because Plaintiff's claims of physical pain and suffering were dismissed on summary judgment, *see* Dkt. No. 66 at p. 20-21, inclusion of testimony regarding any physical pain and suffering endured by Plaintiff is no longer relevant or probative of the issues in this case. Def. MOL, at 4. Furthermore, Defendant argues, the use of any photographs of Plaintiff's fingers and hands during the period in question should be prohibited because, even to the extent that such evidence is relevant in making determinations as to Plaintiff's emotional injuries, admission of this evidence would prejudice Defendant and/or confuse the jury into sympathizing with Plaintiff and inviting them to consider compensating Plaintiff for her physical pain and suffering. *Id.*

Plaintiff counters that she suffered psychological and emotional injury, including depression, from her normal use of the subject BIC standup paddleboard ("SUP") which caused fibers from the SUP to become imbedded in her fingers and hands during her use of the SUP. Pl. Opp., at p. 2. Plaintiff maintains that she suffered pain in her hands and fingers from use of the subject SUP, and, as a result of her physical pain, suffered depression, anxiety and emotional pain initially from not being able to identify what was causing her pain. *Id.* at p. 3. Plaintiff further maintains that she later learned that the subject SUP was shedding what appeared to fiberglass fibers and found that she had fibers embedded in the skin of her fingers which were working their way to the surface of her skin which caused increased physical pain. *Id.* This knowledge, Plaintiff asserts, increased her depression and psychological pain as a result of limitations she was experiencing in the use of her fingers and hands due to such pain. *Id.* Plaintiff further contends that her expert verified that fiberglass fibers were protruding from and shedding from the gap in the seam between the upper and lower shells of the subject board. *Id.* Plaintiff maintains:

> It is necessary for the Plaintiff and other witnesses to be able to testify as to the condition of the Plaintiff's hands and fingers, to the Plaintiff's pain caused by said condition and her apparent depression and emotional injury over, initially her not knowing the cause of the pain and, thereafter the limitations caused by said pain. The Plaintiff and other witnesses should not be prevented from using photographs of the Plaintiff's hands and fingers for identification and reference in their testimony.

*Id*. at 4. Plaintiff contends that while the Court dismissed her claims that her physical injuries were caused by the allegedly defective SUP, the Court left intact her claims that such defect caused her depression, psychological and emotional injuries. *Id.* at 4-5. Plaintiff argues that the Court "is able to instruct the jury that it is not being asked to determine the Defendant's liability, if any, for Plaintiff's physical injuries, and must limit its deliberations to the determination of whether the Defendant is liable for the Plaintiff's psychological injuries, if any." *Id.* at 5. Plaintiff maintains that she "should not be limited in testifying or offering any evidence regarding her emotional damages and any exacerbation of the same nor the cause of her emotional damages." *Id.*

Plaintiff's physical injuries allegedly caused by the subject SUP and her emotional damages allegedly arising from the use of the subject SUP are intertwined. The physical injuries that Plaintiff believes were caused by the use of the subject SUP are the basis for her claims of emotional injuries. Thus, evidence of Plaintiff's physical injuries is relevant to determination of her claims for emotional injuries. *See* Fed. R. Evid. 401(a)-(b)(Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence . . . and the fact is of consequence in determining the action."). The Court recognizes that relevant evidence can be precluded where its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury, *see*

Fed. R. Evid. 403; *Highland Capital Mgmt. , L.P. v. Schneider*, 551 F. Supp.2d 173,200 (S.D.N.Y. 2008); *Shepherd v. Smith*, 2019 U.S. Dist. LEXIS 178838, at *11-12 (N.D.N.Y. 2019), and that courts can exclude relevant evidence that tends to influence jurors by unduly distracting their attention from the issues through sympathy. *See United States v. Malka*, 2022 U.S. Dist. LEXIS 86361, at *20 (S.D.N.Y. 2022)(citing cases). However, upon Rule 403 balancing, the Court finds that as a general matter evidence of Plaintiff's physical injuries should not be precluded provided a limiting instruction similar to the one proposed by Plaintiff is given to the jury. Nevertheless, because the actual evidence sought to be precluded - such as the pictures of Plaintiff's hands - has not been provided on this motion, the Court reserves until trial to determine whether any particular piece of evidence should be precluded under Rule 403.

**b. Precluding Plaintiff's treating physicians and therapists from offering expert testimony as to emotional damages and opinions outside their individual treatment of Plaintiff**

Next, Defendant argues that Plaintiff's treating physicians and therapists should be precluded from offering expert testimony as to emotional damages, and must be precluded from offering opinions outside their individual treatment of Plaintiff. Def. MOL, at 4. In making this argument, Defendant relies on Judge Kahn's decision where he stated that treating physicians need not be designated as experts in order to testify, but without properly declaring a treating physician as an expert witness, a physician's allowable testimony is limited to his or her care and treatment of the patient. *Id.* (citing Dkt. No. 66 at p. 17). Further, Defendant cites Judge Kahn's decision where he held that a treating physician, who has not complied with the reporting requirement of Rule 26(a)(2)(B), should not be permitted to render opinions outside

the course of treatment and beyond the reasonable reading of the medical records. *Id.* (citing Dkt. No. 66 at p. 17)(internal citations omitted).

Defendant argues:

> Here, none of Plaintiff's treating physicians were disclosed as experts. Judge Kahn already ruled that the testimony of plaintiff's treating physicians, Drs. Griger and Russin, was insufficient as to causation because they were not disclosed as experts and thus their testimony is limited to their treatment of plaintiff. Dkt. No. 66 at pp. 16-20. Dr. Griger's conclusion was based on the notes of an outside hand surgeon and not his own treatment and therefore inadmissible. *Id.* at p. 17. Dr. Russin at least relied on his own treatment; however, he did not conclude that fiberglass caused plaintiff's injuries and therefore he did not create a question of fact to defeat summary judgment. *Id.* at 19-20.
>
> Regarding plaintiff's emotional injuries, neither Dr. Griger nor Dr. Russin treated plaintiff for depression or her mental health. *See* Dkt. Nos. 54-1 and 54-2. Neither diagnosed her with depression or any psychological injury; neither prescribed her any anti-depressants or similar medication. *See id.* Therefore, if called to testify at the trial of this matter, neither Dr. Griger nor Dr. Russin would be able to provide any relevant or admissible testimony on plaintiff's emotional damages and they should be precluded from doing so.

Def. MOL at 5.

In response, Plaintiff argues that her physicians, if called to testify, "would be called as fact witnesses as to the Plaintiff's physical condition with respect to her hands and fingers as well as to their observations of signs of depression or anxiety on the part of Plaintiff regarding said condition. They would not be called as expert witnesses as to emotional damages or to provide opinions outside their treatment of Plaintiff." Pl. Opp. at 4.

Dr. Griger and Dr. Russin will be allowed to testify to their care and treatment of Plaintiff with respect to her hands and fingers as well as to their observations of signs of depression or anxiety on Plaintiff's part. They will not be allowed to offer expert opinion as to whether Plaintiff suffered from depression or anxiety, or to the cause of any symptoms of depression or anxiety that they observed. To the extent that neither physician diagnosed Plaintiff with depression or

any psychological injury, or prescribed her any anti-depressants or similar medication, such evidence can be used by Defendant on cross-examination to challenge the weight of any testimony that either physician may provide.

Defendant also argues that none of Plaintiff’s treating therapists can provide any relevant testimony. Def. MOL at 5. With regard to Esther Miller, LCSW, Defendant contends that Ms. Miller saw Plaintiff six times over a seven-month period from January-July 2016, and that in May 2016, Ms. Miller noted that "client seems teary and depressed." Defendant argues that because Plaintiff’s alleged injuries from the paddleboard occurred in June-July 2016, Plaintiff was already having emotional issues, including feelings of depression, prior to the time of her alleged injuries. Defendant further contends that Ms. Miller stopped seeing Plaintiff around the time of the alleged injuries, and at no point in Ms. Miller's treatment records is there any reference to Plaintiff’s hands, a SUP, or fiberglass. Thus, Defendant contends, Ms. Miller would be unable to offer any relevant testimony to Plaintiff’s case-in-chief.

Similarly, Defendant notes that Plaintiff also treated with Steven W. Schaeffer, psychotherapist at Bassett Medical Center in Cooperstown, from April 2018-June 2018. Defendant indicates that Dr. Schaeffer's notes include a thorough medical history but at no point mention a paddleboard, fiberglass, or any associated injuries. Further, Defendant contends, Dr. Schaeffer's treatment note on April 23, 2018 indicates that Plaintiff "has been dealing with depression and anxiety” since her husband left her and their children. Defendant further indicates that on June 7, 2018, Dr. Schaeffer attributed Plaintiff’s psychological condition to stress from raising children alone and from her son's involvement as a victim of a hate crime. Defendant also contends that Dr. Schaeffer's treatment is not contemporaneous with Plaintiff’s alleged injuries and his notes contain no reference to her hands, a SUP, or

fiberglass.

Thus, Defendant argues that "neither therapist (neither of whom was disclosed as an expert or witness) has any personal knowledge of Plaintiff's emotional injuries that could have been caused by the paddleboard. Therefore, if called to testify, neither Esther Miller nor Steven Schaeffer will be able to provide any information relevant to this matter and they should be precluded from testifying." Def. MOL at 6.

Plaintiff has not responded to these particular arguments, and her witness list does not include either Ms. Miller or Dr. Schaeffer. Accordingly, Defendant's motion in this regard is granted and neither Ms. Miller nor Dr. Schaeffer will be allowed to testify on Plaintiff's case-in-chief.

Defendant also notes that Plaintiff was evaluated by a psychiatrist, Richard Brown, MD, on five occasions between June 7, 2018 and March 7, 2019. Def. MOL at 7. Defendant indicates that during the initial visit on June 7, 2018, Plaintiff was diagnosed with major depressive disorder. *Id.* However, Defendant indicates, in the assessment summary there is no indication that the depression is related to any issue with Plaintiff's hands, a SUP, or fiberglass. *Id.* Defendant maintains that this is also true for each of the follow-up visits. *Id.* Therefore, Defendant contends, "if called to testify in this matter, Richard Brown, MD, will not be able to provide any information relevant to Plaintiff's alleged damages." *Id.*

Plaintiff has not responded to this particular argument and her witness list does not include Dr. Brown. Thus, Defendant's motion in this regard is granted and Dr. Brown will not be allowed to testify on Plaintiff's case-in-chief.

**c. Exacerbation of emotional damages and causation**

Defendant contends that Plaintiff should be precluded from offering any evidence or testimony of an exacerbation of emotional damages or to causation of such damages. In this regard, Defendant argues that under New York law "it is absolutely required to provide expert testimony regarding exacerbation of an injury and the cause thereof because that is beyond the scope of a normal layperson's knowledge." Def. MOL at 7 (citing *Reeder v. New York*, 23 Misc.2d 311, 314 (Sup. Ct. N.Y. Cty. 1960)("expert medical testimony is essential to establish an aggravation of injuries and the extent thereof'); *Matthews v. Hewlett-Packard Co.*, 2017 U.S. Dist. LEXIS 214075 (S.D.N.Y. 2017), at *7 (finding expert testimony required as to causation where the link between Plaintiffs injury and its purported cause "is not readily apparent"); *Romanelli v. Long Island Railroad Company*, 898 F. Supp.2d 626, 633 (S.D.N.Y. 2012) (plaintiffs own testimony regarding the "exact nature of all substances to which he was exposed or their impact on his health" is inadmissible because it requires specialized knowledge); *Blume v. Port Auth. Trans-Hudson Corp*., 2020 U.S. Dist. LEXIS 60562 (S.D.N.Y. 2020), at *19 (discussing *Romanelli* and explaining that "whether those respiratory conditions aggravated the plaintiff's pre-existing heart problems" required expert testimony to prove causation)).

Defendant notes that while Plaintiff was treated for emotional and psychological issues by Ms. Miller and Dr. Schaeffer, Plaintiff's treatment records do not contain a single reference to the SUP, fiberglass, or her hands. Furthermore, Defendant notes that Plaintiff has admitted during her deposition testimony that she has several pre-existing and confounding psychological and emotional issues, including a diagnosis of depression dating back to 2002. *Id.* at 8 (citing Dkt. No. 53-5 at pp. 74-75). Defendant contends that Plaintiff's medical records and testimony "make clear that Plaintiff has experienced numerous events in her life that may

have affected her mental and emotional health." *Id.* Thus, Defendant argues,

> any allegations of emotional damage from the allegations in the subject complaint necessarily constitute either an exacerbation of pre-existing injuries and/or are confounded by subsequent psychological problems for which she sought treatment. Due to the complex mental health history, a lay juror would be unable to discern between Plaintiff's alleged emotional damages arising from the allegations in this case and her pre-existing and/or subsequently arising unrelated psychological conditions. Her emotional issues are therefore outside the ken of the average juror and explanation will require expert testimony. Plaintiff herself isn't even qualified to offer testimony sufficient to distinguish between her emotional damages related to the allegations in this lawsuit and her pre-existing and confounding psychological issues. However, Plaintiff has not disclosed a medical or psychological expert to testify as to her emotional and psychological injuries. As Plaintiff has no expert to testify as to any damages resulting from exacerbation of her emotional condition resulting from the allegations in this lawsuit, she should be wholly precluded from offering any such evidence.

*Id.* at 8-9.

Plaintiff will be allowed to testify to her feelings of depression and anxiety related to what she contends were her physical injuries caused by fiberglass fibers from the subject SUP. She will not be allowed to testify as to medical diagnoses of these conditions, and, as indicated above, Plaintiff's physicians may not offer expert opinion on these issues but rather may only testify as fact witnesses to what they observed. Defendant may use Plaintiff's treatment records to challenge the weight of any testimony in these regards.

Defendant further argues that Plaintiff's remaining causes of action each require her to prove a causal connection between the SUP and her alleged emotional injuries. Defendant maintains that expert testimony is required as to causation where the link between Plaintiff's injury and its purported cause "is not readily apparent." *Id.* at 9 (quoting *Matthews v. Hewlett-Packard Co.*, 2017 U.S. Dist. LEXIS 214075 (S.D.N.Y. 2017)). On this issue, Plaintiff will be allowed to testify as to her feelings of depression and/or anxiety related to what she

believed was causing the physical pain in her hands. The Court will rule at trial whether any testimony sought from Plaintiff traverses the line between Plaintiff describing her feelings at particular times and offering a lay opinion as to the cause of Plaintiff's feelings. Defendant may use Plaintiff's prior and subsequent medical treatments for emotional conditions to challenge the weight of any testimony in this regard.

**d. Alternative destructive testing techniques**

Defendant argues that Plaintiff's expert, Arvind Rao, should be precluded from testifying that his findings were hindered by his inability to conduct his preferred method of testing during discovery, which would have involved destructive testing of the paddleboard. Def. MOL at 9. Defendant maintains that the question of whether destructive testing should be allowed was fully briefed and the Court rejected the request for destructive testing. *See* Dkt. Nos. 41 (Court Order),[1] 44 (Plaintiff's Status Report); 45 (Defendant's Status Report), and 47 (Text Order).[2]

---

[1] In the Dkt. No. 41 Order, Judge Dancks held in pertinent part:

> (2) As to the destructive testing requested for the subject 2016 ACE TEC "Crossfit 10", before the Court permits any destructive testing, the parties shall:
>
> (a) Obtain the results of their respective experts' findings as to the chemical analysis of the fibers previously taken from the subject SUP as compared to the organic fibers removed from Plaintiff's hands and exchange the preliminary findings;
>
> (b) Obtain information from their experts on whether non-destructive testing such as imaging done with ultra sound, CT, X-ray, thermal or otherwise would show cracking, delamination, seam failure, seam leaking, or any other type of structural failure of the seam, and/or the failure of the sealing of the top and bottom portions of the board where they are joined at the seam; and
>
> (c) By November 30, 2018, each party shall file a status report which includes an affidavit from their respective experts that provides the information and findings as outlined in II.(2)(a) and (b) above. Upon receipt of this information, the Court will make a further determination on whether some form of destructive testing will be permitted and issue an Order accordingly.

Dkt. No. 41 at 3-4.

[2] In the Dkt. No. 47 Text Order, Judge Dancks held in pertinent part: "The Court made the following rulings at the 12/20/2018 Telephone Conference: Court permits Plaintiff to have her expert take

(continued...)

Defendant maintains that discussion of the destructive testing proposed by Plaintiff and rejected by the Court in 2018 would be speculative, irrelevant, and prejudicial to Defendant, and thus should be precluded. Def. MOL at 9. Defendant asserts:

> [P]laintiff's proposed destructive testing, which required cutting into the paddleboard to analyze its interior, would not lead to relevant testimony. There is no dispute that the board has some fiberglass in it, and there is no allegation that Plaintiff ever was exposed to the interior of the board. The dispute relates to the composition of fibers found at the seam of the board, not the interior. The fibers at the seam were tested, analyzed and discussed by the experts in their respective reports, and discussion of the interior of the board will only convolute matters at trial.

*Id*. at 10.

Plaintiff responds that her expert "should not be limited in testifying as to alternate destructive testing techniques unless the defense is likewise limited in offering evidence or testimony regarding any alleged [] lack of evidence of the interior composition of the subject SUP supporting the claim of defective manufacture." Pl. Opp. at 5.

Because destructive testing was not allowed, testimony by Plaintiff's expert as to what he might have found had he conducted destructive testing is speculative and irrelevant. Thus, testimony this regard will not be allowed in the first instance. However, the Court may revisit this decision at trial if Defendant opens the door by challenging Plaintiff's expert's conclusions based on the lack of evidence or testing of the interior composition of the subject SUP.

**e. BIC Sport's warranty claim charts and complaints about other defects**

Defendant argues that BIC Sport's warranty claim charts and complaints about other

---

[2](...continued) four additional seam samples as done previously by 2/15/2019. Court will also permit Plaintiff's expert to examine-only the board cross section samples by 2/15/2019. Plaintiff shall provide the anchor to Defendant and Defendant's expert is permitted to inspect the anchor and conduct non-destructive testing to be completed by 2/15/2019."

types of defects should be precluded. Defendant contends that there have been zero complaints from other BIC Sport customers about the same issue Plaintiff alleges here. Rather, Defendant contends, the "SUP-related complaints that the company did receive involved bubbling or cracking along the seam, which is not what is alleged to have happened to Plaintiff's board here. Any customer complaint evidence is therefore only minimally relevant and would be highly prejudicial to Defendant. It should therefore be precluded." Def. MOL at 12. Plaintiff counters that she "should not be limited in offering evidence provided by the Defendant regarding warranty claims and defects Defendant received regarding the subject SUP board model line as such claims verify that said model line were subject to delamination of the upper and lower outer shells and leaking which is integral to the Plaintiff's claims of strict liability and negligent manufacture." Pl. Opp. at 5-6.

The parties have not presented to the Court the warranty claims to which they refer. Consequently, the Court will reserve on this argument and will determine at trial whether any particular warranty claim involving the same model line is probative of Plaintiff's contention that the model line is subject to delamination of the upper and lower outer shells thus allowing leaking of fiberglass.

**f. BIC Sport's exemplar board**

Defendant contends that during the course of discovery it produced samples of an exemplar board for the purpose of an inspection that took place on February 4, 2019. Defendant expects that Plaintiff will attempt to introduce photographs taken of the exemplar board and expert testimony comparing it to the allegedly defective board. Defendant maintains that this evidence should be precluded because it "would be both irrelevant and speculative." Def. MOL, at 12. In this regard, Defendant contends that the exemplar board sample is not the

same model as the SUP at issue in this case. Thus, Defendant argues, any evidence as to the composition of the exemplar board should be precluded as not depicting accurately the instrumentality at issue. *Id.* Defendant further contends that the exemplar board was not tested by the parties' experts per the agreed-upon protocol. *Id*. at 12-13. Thus, Defendant contends, any comparison data would be based upon pure speculation. *Id.* at 13.

Plaintiff counters that her expert should not be limited from using Defendant's exemplar cut out of a SUP Defendant provided as an example of the construction of the subject SUP models for comparison to the subject SUP. She contends that such comparison is necessary to her expert's opinion "regarding the defective manufacture of the subject SUP board which caused the internal fiberglass fibers to be able to shed from the gap seam between the upper and lower shells which gap is not present in the exemplar." Pl. Opp. at 5.

Inasmuch as it appears that Defendant provided the exemplar board for purposes of inspection, testing, and comparison, Plaintiff's expert will be allowed to testify as to his inspection and testing of the exemplar board and to present any opinion he may have as to a comparison between the exemplar board and the subject SUP. Any challenges to the comparability of the exemplar board and the subject SUP, or to the method of inspection and testing used by Plaintiff's expert, go to the weight of his testimony not its admissibility. Thus, Defendant's motion in this regard is denied.

**g. Defendant's current corporate structure**

On August 23, 2021, Defendant submitted a Supplemental Corporate Disclosure Statement pursuant to Federal Rule of Civil Procedure 7 .1 (b). Dkt. No. 68. As Defendant indicates, in that disclosure Defendant represented that the original parent company has

retained control over this matter. Defendant contends that this means that the new corporate structure has no bearing on this lawsuit. Thus, Defendant argues, “no relevant information can be gleaned by questioning related to the current corporate parent. The introduction of any such information can only be used to confuse the jurors and distract from the issues at hand.” Def. MOL at 13. Defendant maintains that to the extent Plaintiff seeks to question Defendant regarding the current corporate structure, such questioning should be precluded pursuant to Federal Rules of Evidence 402 and 403. *Id.* Plaintiff counters:

> The Defendant, as per disclosures by the Defendant is a subsidiary of and/or related company to the Defendant's parent BIC company which manufactures and ships to the Defendant the BIC stand-up paddle boards and other products sold directly and distributed to authorized dealers for by [sic] Defendant for sale in the United States to end use customers. Thus, it is necessary for the Plaintiff to introduce evidence of the corporate structure of the Defendant and the parent company on her case in chief in order to establish who manufactured the subject SUP board, how it came to be in the possession of the Defendant and how it was distributed to the authorized dealer that sold it to the Plaintiff.

Pl. Opp. at 1-2.

The Court agrees with Plaintiff that it is relevant who manufactured the subject SUP, how it came to be in the possession of Defendant, and how it was distributed to the authorized dealer that sold it to Plaintiff. Thus, Plaintiff may question Defendant as to Defendant’s corporate structure as it existed at the time the subject SUP was manufactured, came into Defendant’s possession, and was distributed to the authorized dealer that sold it to Plaintiff.

**h. General negligence cause of action**

Defendant argues that Plaintiff’s general negligence cause of action should be limited to only those allegations that have not been previously dismissed and that are not duplicative of other remaining causes of action. Def. MOL at 13. In this regard, Defendant asserts that it is

well-settled that a plaintiff is not permitted to relitigate already-decided issues, and that it is improper for a plaintiff to earn a double recovery for the same damages under different theories. *Id*. at 14. In response, Plaintiff asserts: "As the court left intact the Plaintiff's claims of strict liability, defective manufacture, breach of implied warranty and general negligence with respect to Plaintiff's claims of depression, psychological and emotional injuries, the Court should not now limit the Plaintiff's alternate recovery under any of said causes of action." Pl. Opp. at 6. For the reasons that follow, Defendant's motion in this regard is granted in part and denied in part.

As Defendant indicates, only two paragraphs in the Complaint contain allegations as to how Defendant was allegedly generally negligent. *See* Dkt. No. 1, ¶¶ 61-62. The first paragraph alleges that "Defendant knew or should have known with the exercise of reasonable care that, due its defective design, defective manufacture, inadequate testing, inadequate warnings and inadequate instructions to end users, the ACE TEC SUP was an unreasonably dangerous product and, nevertheless, manufactured and placed said product into the stream of commerce." Complaint, ¶ 61. The second paragraph states that "Defendant knew or should have known that a significant portion of the users of said product would be subject to a significant risk of danger if said product frayed, delaminated or shed microscopic fibers." Dkt. No. 1 at ¶ 62.

Defendant argues that Plaintiff's general negligence claim should not be allowed to proceed on the theory that Defendant committed negligence due to "defective design" because it is duplicative of Plaintiff's separately pleaded causes of action for "strict products liability - design defect" and "negligent design," both of which were dismissed by the Court on summary judgment. Dkt. No. 66 at pp. 21-22. The Court agrees with Defendant. Judge Kahn found that

Plaintiff could not prevail under a defective design theory sounding in either strict liability or negligence because she provided no evidence that a safer design was feasible as required under New York law. *See* Dkt. No. 66 at 21. Thus, Plaintiff could not succeed on this aspect of her general negligence claim. Consequently, Plaintiff may not proceed on the theory that Defendant was negligent due to the defective design of the subject SUP.

Defendant also argues that the general negligence claim should not be allowed to proceed on the theory that Defendant committed negligence by providing "inadequate warnings and inadequate instructions to end users" because it is duplicative of Plaintiff's separately pleaded "strict products liability - failure to warn" cause of action, which was also dismissed by the Court on summary judgment. *See id.* at p. 22. The Court agrees with Defendant. As Defendant argues, it has already been established that Defendant did not know of the risk of the alleged danger from fiberglass exposure from the seams of the SUP because Defendant had never received any complaints on that issue. Def. MOL at 15 (citing Dkt. No. 66 at pp. 11, 22). Moreover, as Defendant argues, it has already been established that "Plaintiff, for her part, does not argue that Defendant did know or should have known the potential danger from fiberglass exposure." *Id.* (quoting Dkt. No. 66 at p. 22). Allowing Plaintiff to proceed on the theory that Defendant was negligent for failing to provide adequate warnings or instructions to end users would essentially permit Plaintiff to relitigate a theory that has already been shown to be non-viable and dismissed. Consequently, Defendant's motion in this regard is granted and the general negligence claim will not be allowed to proceed on the theory that Defendant committed negligence by providing "inadequate warnings and inadequate instructions to end users."

Defendant also argues that the allegation that Defendant committed negligence due to

"defective manufacture" is duplicative of Plaintiff's separately pleaded "strict products liability - manufacturing defect" and "negligent manufacture" causes of action, both of which remain viable after the summary judgment motion. Defendant contends that "[i]f Plaintiff proves 'defective manufacture' then Defendant would necessarily be liable under either of those other two theories. Permitting Plaintiff to also recover in general negligence for 'defective manufacture' would be tantamount to a double recovery for Plaintiff, which is impermissible." Def. MOL at 15. The Court does not agree. Plaintiff may proceed on alternate theories, and if she prevails on any of these theories she is entitled to damages for her injuries. The damages she would be entitled to recover under any of the theories are the same, and therefore the jury will be asked to assess a single amount of damages if Plaintiff succeeds on any of her claims. This does not amount to a double recovery for Plaintiff. Defendant's motion in this regard is denied.

To the extent that Defendant argues that Plaintiff's theory of negligence based upon a manufacturing defect should be precluded because "it has already been established that Defendants did not know of the risk [of danger if the SUP frayed, delaminated or shed microscopic fibers] because they had never received any complaints on that issue," Def. MOL at 15(citing Dkt. No. 66 at pp. 11, 22), the argument is without merit. Under New York law negligence is defined as the "lack of ordinary care," or a "failure to use that degree of care that a reasonably prudent person would have used under the same circumstances." *Rand v. Finger Lakes Premier Properties, Inc.*, 155 N.Y.S.3d 658, 660 (N.Y. App. Div. 4th Dept. 2021)(quoting N.Y. Pattern Jury Instr.--Civil 2:10). The negligence standard is judged from the perspective of the degree of care that a reasonably prudent person would have used under the circumstances, not whether the defendant had prior notice of an alleged defect. Thus the

Court will allow the general negligence claim to proceed on the theories that Defendant did not use that degree of care that a reasonably prudent person would have used under the same circumstances in the manufacture and/or testing of the SUP.

## III. CONCLUSION

For the reasons stated above, Defendant's motion in limine, Dkt. No. 77, is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

Dated: October 6, 2022

Thomas J. McAvoy
Senior, U.S. District Judge